Ms. Carolyn J. Hagler purchased an automobile from Bart Starr Lincoln Mercury on January 19, 1976 and financed the purchase of the vehicle through Ford Motor Credit Company (hereafter FMCC). Ms. Hagler defaulted on her payment agreement in August 1976 and FMCC filed suit against her in February 1977 to recover the unpaid balance on the note. Ms. Hagler counterclaimed, contending FMCC had violated the disclosure requirements in the Truth in Lending Act, 15 U.S.C. § 1638 (a) (1976), and Regulation Z, 12 C.F.R. § 226.8 (b) (1979). The trial court held that the counterclaim was barred by the statute of limitations.
On appeal we held that the counterclaim was not barred by the statute of limitations and remanded the case for further proceedings. On remand the trial court proceeded to consider the three remaining issues in the case. The first issue was whether the counterclaim is barred by § 130 (h) of the Truth in Lending Act. The court held that it was not barred. The second issue was whether the insurance provisions in the installment sales contract created a "security interest" and, if so, whether FMCC was liable for failure to disclose such interest. The court held that the insurance provision was not a security interest and therefore FMCC was not liable for its failure to disclose, or that if it was a "security interest," it was adequately disclosed on the front page of the agreement. The third issue was whether FMCC adequately identified itself as a creditor to Ms. Hagler. The court held that under the facts of this case it had.
Ms. Hagler appeals the second and third rulings of the trial court. FMCC does not appeal the first ruling, and that ruling, consequently, will not be an issue in this case.
Ms. Hagler commences her argument by saying that the insurance provision, i.e. paragraph 18 of the contract in question, which is printed on the reverse side of the contract, is in practical effect a "security interest" which is required by § 128 (a) of the Truth in Lending Act and Regulation Z to be disclosed on the front page of the contract. The "security interest" disclosure is set out in paragraph 13 of the contract and is as follows:
 (13) Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property *Page 82 
(described above) and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder.
Paragraph 18 of the contract provides:
18. RISK OF LOSS — INSURANCE
 The Property shall be at Buyer's risk. If the original amount financed, exclusive of insurance charges, is $300.00 or more and the value of the Property is $300.00 or more, Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interests of Buyer and Seller against loss, damage or destruction of or to the Property in such forms and amounts as Seller may require. Buyer shall have the option of providing such insurance through an existing policy or a policy independently obtained and paid for by Buyer. The inclusion of a charge for insurance herein shall not relieve Buyer of such obligation but only authorizes Seller to attempt to obtain the requested coverages on Buyer's behalf through an authorized agent; provided, if Seller is unable to obtain the requested coverages for the term indicated for the amount included herein, Seller may (i) obtain such coverages for such term, if any, as the insurance carrier to whom Seller shall apply therefor will provide for such amount, or (ii) credit such amount to the final maturing instalments hereunder in inverse order of maturity or as otherwise required by law.
 If Buyer fails to obtain or maintain such insurance, or fails to furnish satisfactory evidence thereof upon request, Seller may, but shall not be required to, and without prejudice to his rights hereunder if he does not, obtain such insurance protecting either the interests of Buyer and Seller or the interests of Seller only. In such event, Buyer agrees to reimburse Seller for the cost thereof forthwith upon demand together with interest thereon at the highest lawful contract rate.
 Buyer hereby assigns to Seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums, and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of Seller.
FMCC correctly points out that the purpose of the Act is to require in a consumer credit transaction that the debtor receive from the creditor a disclosure statement containing certain information. Regulation Z, § 226.8 (a) requires that the disclosures be made on the same side of one page. If the statute is not followed, a penalty of twice the amount of the finance charge plus a reasonable attorney fee is placed against the creditor and on any assignee who purchases a credit document that has an apparent Truth in Lending violation on the face of it. Truth in Lending Act § 128 (a)(10) and Regulation Z, § 226.8 (b) require also that any security interest held by the creditor must be disclosed. Thus, Ms. Hagler contends that the insurance proceeds and refunds provision on the reverse side of the contract created a security interest which was not disclosed to her, thus making FMCC a violator of the statute as a subsequent assignee.
The question raised is one of first impression in the state courts of Alabama; however there are federal decisions on the subject but they are in conflict. Ordinarily a decision of a federal appellate court on a federal question, absent a ruling by the United States Supreme Court, is binding on the state courts of Alabama. Dickey v. West Boylston Manufacturing Co.,251 Ala. 19, 36 So.2d 106 (1948). However, when the decisions are in conflict we believe that we are free to follow and apply the better reasoned decision. We consider the recent United States Fifth Circuit Court of Appeals case of Edmondson v.Allen-Russell Ford, Inc., 577 F.2d 291 (5th Cir. 1978) to be *Page 83 
the better reasoned decision on the question now being reviewed.
In Edmondson, the factual situation was very similar to that in the case at bar. Edmondson purchased an automobile from Allen-Russell Ford, Inc. and entered into a retail installment contract. A few days later the contract was assigned to Ford Motor Credit Company. The contract included on its face a disclosure statement as required by the Truth in Lending Act. About a month after the contract was made, the purchaser filed suit against Allen-Russell and FMCC claiming that defendants had failed to comply with the Truth in Lending Act and Regulation Z in several respects, one of which was that FMCC had failed to disclose that it was asserting a security interest in returned or unearned premiums of the automobile insurance. FMCC contended that the assignment created by paragraph 18 of the contract, i.e. the automobile insurance provision, did not create a security interest and did not have to be disclosed.
The Fifth Circuit said:
 "The Truth-in-Lending Act requires a creditor to disclose a `description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit.' 15 U.S.C. § 1639 (a)(8). Regulation Z, promulgated by the Federal Reserve Board pursuant to authority granted in the Act, defines `security interest' and `security' to `mean any interest in property which secures payment or performance of an obligation.' 12 C.F.R. § 226.2 (gg). The definition also lists some interests in property that are security interests. The assignment in this case, although not specifically listed, is a security interest because it is an interest in property which secures payment of an obligation."
 570 F.2d [1248] at 1249. Regulation Z itself provides that the terms "security interest" and "security." "include, but are not limited to, security interests under the Uniform Commercial Code . . ." 12 C.F.R. 226.2 (gg). We stressed in Elzea [Elzea v. National Bank of Georgia, 570 F.2d 1248 (5th Cir. 1978)] that technical characterizations "are not determinative of whether a creditor holds a security interest under Regulation Z's definition." Id. at 1249-50. Rather, "[t]his question should be answered by examining the rights which the creditor has." Id. at 1250. We noted as significant factors whether the creditor has an interest in property and whether "the assignment helps to secure payment of the obligation." Id. Even property which "cannot presently be identified and may not yet exist" may be the subject of a security interest for Regulation Z purposes. "What is important is that the . . . privilege is valuable to the debtor and he has given up this valuable privilege to the extent of his debt." Id.
 . . . We think it clear beyond peradventure that the assignment of returned or unearned premiums of physical damage insurance confers on the creditor an interest in property which helps to secure payment or performance of contractual obligations. [Footnotes omitted.]
We agree with the Fifth Circuit's conclusion that the assignment of returned and unearned premiums on the automobile insurance gave to the creditor an interest in property that helped secure its loan. Such an interest is a security interest within the meaning of Regulation Z and should have been disclosed.
The appellee relies on the cases of Rounds v. CommunityNational Bank, 454 F. Supp. 883 (S.D.Ill. 1978) and James v.Ford Motor Credit Co., No. 78-647 (D.Colo., filed August 21, 1978), which hold that the term "security interest" as used in the Truth in Lending Act and Regulation Z is limited to those rights which create a lien upon a debtor's property or impose some risk to the debtor's assets.
We conclude that the interpretation placed on the term "security interest" by these two federal district court cases is too restrictive of the language employed in the Truth in Lending Act and especially in Regulation Z. The language of Regulation Z *Page 84 
requires that any interest which secures the payment or performance of the obligation is a security interest. The application of returned or unearned automobile insurance premiums to the payment of the purchase agreement certainly helps to secure its payment or performance. Any other interpretation unduly limits or restricts the language of Regulation Z and should not be followed. Thus, we conclude that the trial court erred in holding that the automobile insurance provision of the contract, i.e. paragraph 18, did not reflect the assignment of a security interest which had to be disclosed. Further, such an interest was not disclosed on the front page of the contract as required by § 128 (a)(10) of the Truth in Lending Act and Regulation Z, § 226.8 (b).
The final issue is whether the trial court erroneously found that FMCC was adequately identified as a creditor of Ms. Hagler.
Ms. Hagler claims that she is entitled to the statutory penalty, as FMCC must disclose itself to her as a creditor and that FMCC's name was printed on the contract below her name and not above her signature as required by Regulation Z, § 226.8 (a). However, Ms. Hagler is relying on § 226.6 (d) which provides that if there is more than one creditor each of them must be "clearly identified." Nevertheless, the trial court found that "the defendant testified she knew at the time she executed the contract with Bart Starr, `that the vehicle was being financed by and through F.M.C.C.'."
The identification issue was considered by the United States District Court for the Northern District of Alabama in Childsv. Ford Motor Credit Co., 470 F. Supp. 708 (N.D.Ala. 1979), and it had this to say:
 This Court considers the better reasoning to be found in the cases holding that Ford Motor Credit Company is clearly identified. The distinguishing rationale can be found in Grey v. European Health Spas, [428 F. Supp. 841 (D.Conn. 1976)]. The requirement that a creditor be identified is not to be equated with a requirement that a creditor be disclosed. In Grey the Court is dealing with the identification requirement of § 226.8 (a), but the analogy to § 226.8 (d) seems proper. Section 226.8 (a) requires that the "creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified." Hence, the regulations consider the identification of the creditor as something other than a required disclosure. If the identity of the creditor were to constitute a disclosure, then under § 226.6 (a) "annual percentage rate" and "finance charge" would be required to be more conspicuous than any identification of the creditor. Finance companies would have to be careful that the name of the company at the top of the page does not exceed the level of emphasis of these two terms further down on the page. Also, when federal disclosures must be separated from state law disclosures under § 226.6 (c), the name of the creditor must appear below the caption stating that the disclosures are made in compliance with federal law. Clearly, such anomalous results go beyond the intention of the drafters of the regulations.
 Since the identification of the creditors does not constitute a disclosure, § 226.6 (a) does not require the identification to be conspicuous. An identification can be clear, i.e. unambiguous and not obscure, and yet not be conspicuous. Cf. Official Staff Interpretation of Regulation Z, 41 Fed.Reg. 41908 (1976).
 The identification of the defendant on the face of the contract is hardly conspicuous, but then neither is it ambiguous or obscure. It appears only an inch from the place for the buyer's signature, and it clearly identifies the defendant as the assignee of the contract. Identification of the defendant as the assignee is accurate and adequately informs the purchaser of the nature of his relationship with the Ford Motor Credit Company. The regulations do not require that the defendant be identified as a "creditor"; *Page 85 
merely that it be identified. [Emphasis theirs.]
The trial court found as a fact that FMCC was a creditor and that it was adequately identified as such. Furthermore, Ms. Hagler admitted that she knew the vehicle was being financed through FMCC. We agree that FMCC was adequately identified as a creditor on the contract. No error here.
That aspect of the trial court's judgment holding that the automobile insurance provision of the contract was not a "security interest" that had to be disclosed and that if it was a "security interest" it was adequately disclosed on the first page of the agreement is reversed, and that aspect of the judgment holding that FMCC was adequately identified as a creditor of Ms. Hagler is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR ENTRY OF JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and HOLMES, J., concur.