**Joseph GREER**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION**

Civ. No. C79–816A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 17, 1980.

Dwight Bowen, Bowen, Derrickson, Goldberg & West, Atlanta, Ga., for plaintiff.

Nolan C. Leake and Ralph A. Pitts, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

This Truth in Lending (hereinafter "TIL") action is presently before the court

on the magistrate's report and recommendation that the plaintiff's motion for summary judgment be denied and the defendant's cross-motion for summary judgment be granted. The court disagrees with the magistrate and finds that the defendant violated the TIL Act by failing to disclose a potential security interest to be taken in unearned insurance premiums. The court, therefore, grants the plaintiff's motion for summary judgment.

On August 24, 1978, the plaintiff purchased a car from Capital Automobile Company. The contract was assigned to the defendant, General Motors Acceptance Corporation (hereinafter "GMAC"). The plaintiff subsequently filed this TIL action, and GMAC filed a counterclaim for the amount due under the contract after voluntary repossession and sale of the automobile. In his complaint the plaintiff alleged three violations of the TIL Act: (1) failure to properly disclose the amount of the official license fee, (2) failure to disclose its security interest in insurance proceeds or returned and/or unearned insurance premiums, and (3) failure to properly disclose its security interest in after-acquired equipment and

accessories. It is clear from the record that the license fee was properly disclosed and that the contract in dispute did not purport to give the defendant a security interest in after-acquired equipment and accessories. The court therefore adopts the magistrate's finding that there was no TIL violation presented in the plaintiff's first and third allegations. The court also agrees that the defendant properly disclosed the security interest GMAC took in the insurance proceeds;[1] the court does not agree, however, that GMAC had no obligation to disclose the potential security interest to be taken in the plaintiff's unearned insurance premiums.

It is beyond dispute that creditors[2] must disclose the existence of a security interest taken in unearned insurance premiums. *Edmondson v. Allen-Russell Ford, Inc.,* 577 F.2d 291 (5th Cir. 1978), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979). This case differs from *Edmondson,* however, in that the security interest would not arise unless the debtor failed to maintain property damage insurance coverage on the collateral for the loan and GMAC was forced to buy insurance to protect its interest in the collateral.[3] The

---

1. In his supplemental motion objecting to the magistrate's report, the plaintiff contends that the recent decision of *Souife v. First National Bank of Commerce,* 628 F.2d 480 (5th Cir. 1980), requires the court to find a violation for failing to properly disclose a security interest taken in insurance proceeds. In light of the fact that the court has found a violation on another ground, there is no need to reevaluate the magistrate's finding that the security interest was properly disclosed. *See Turner v. Firestone Tire & Rubber Co.,* 537 F.2d 1296 (5th Cir. 1976).

2. The magistrate found that GMAC was a "subsequent assignee" of the contract and that consequently its liability was limited to defects "apparent on the face of the instrument" pursuant to 15 U.S.C. § 1614. Although the court believes there is a mixed question of fact and law as to whether the defendant is a "creditor" within the meaning of the Act, it does not find it necessary to remand the case to the magistrate to make the factual determination. The court believes that the defect in the credit transaction was apparent on the face of the contract and that a subsequent assignee would stand in the stead of an original creditor under the provisions of 15 U.S.C. § 1614.

3. Paragraph 3 of the "Additional Terms" on the back of the statement provides:

"(a) In the event ... that [the obligation payable hereunder] does not include a charge for required physical damage insurance, buyer shall furnish satisfactory evidence that said property continues to be effectively and adequately covered by such insurance at all times during the term of this contract.

"Upon failure of the buyer to do so for any reason, seller may, but without prejudice to seller's rights under this contract if it does not, endeavor to procure such insurance, and in the event that seller does procure same, buyer agrees to pay, as an additional part of the obligation secured hereunder, a charge equal to the amount of the premium for such insurance, plus a charge equal to the additional cost of any existing creditor insurance elected by buyer and financed hereunder (Item 4C on face of this contract), together with interest on the total of such additional charges at the highest lawful contract rate, in equal instalments concurrently with the instalments of the total of payments then remaining hereunder.

" ...

"(c) In the event that a charge for any physical damage insurance is an item hereinabove included in the obligation payable under this

defendant argues that if it obtained property damage insurance on the automobile because of the debtor's failure to do so, it would be a "subsequent occurrence" within the meaning of 12 C.F.R. § 226.6(g)[4] and no liability would attach for failing to disclose the security interest taken in the unearned insurance premiums. The plaintiff counters that section 226.6(g) does not operate to cure defects in the creditor's original disclosure statement and that a creditor is required under 12 C.F.R. § 226.8(b)(5) to disclose "any security interest held or to be retained or *acquired* by the creditor in connection with the extension of credit . . . ." [Emphasis added.] The plaintiff argues that under the reasoning in *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978) (assignment of homestead and exemption is a security interest which must be disclosed even though the creditor's rights are contingent on events not in his control), the fact that the security interest does not arise unless the defendant fails to maintain property damage insurance does not mean that it need not be disclosed.

■ The court finds that it must agree with the plaintiff. Section 226.6(g) of Regulation Z was intended to relieve the creditor from making the full purview of disclosures for every contingency which might arise. It was not intended to relieve the creditor from making disclosures required under the Act. Certainly a debtor's default or payment of a loan is a "subsequent occurrence" under section 226.6(g); however, that does not relieve the creditor from disclosing "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." 12 C.F.R. § 226.-8(b)(4). Under the defendant's reasoning, section 226.6(g) would relieve the creditor from making these disclosures in the original disclosure statement. The court cannot agree. The TIL Act is clear that "any security interest held or to be retained or acquired" must be disclosed. The Fifth Circuit in *Elzea* clearly stated that a security interest must be disclosed even though it is contingent on the occurrence of an event not in the control of the defendant.[5] The

4. Subsection g provides in its entirety:

"*Effect of subsequent occurrence.* If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.* "

" * Such acts, occurrences, or agreements include the failure of the customer or lessee to perform his obligations under the contract and such actions by the creditor or lessor as may be proper to protect his interests in such circumstances. Such failure may result in the liability of the customer or lessee to pay delinquency charges, collection costs, or expenses of the creditor or lessor for perfection or acquisition of any security interests or amounts advanced by the creditor or lessor on behalf of the customer or lessee in connection with insurance, repairs to or preservation of collateral or leased property."

5. In the present case the security interest would not arise unless the defendant failed to maintain physical damage insurance and the creditor was forced to obtain such insurance to protect his interest in the collateral. Of course, as with all security interests, GMAC may not realize on the collateral (unearned insurance premiums) until some further event occurs (insurer cancels the physical damage insurance).

contract or a charge for such insurance becomes included therein at any time hereafter under subparagraph (a) hereof, and in the further event that (1) the insurance company to which the seller is authorized to apply therefor refuses to issue such insurance, or (2) subsequent to issuance thereof and during the term of this contract such insurance is cancelled, then the seller shall apply either an amount equal to the aforesaid insurance charge in the case of (1) above, or in the case of (2) above an amount equal to the unearned portion of the premium for such insurance upon seller's receipt thereof from the insurer pursuant to authorization hereby given therefor, as a credit in reduction of that portion of the total of payments which comprises so much of one or more of the instalments payable on the latest due dates (including the final due date) hereunder as equals the amount herewith provided to be applied, it being understood and agreed that *the order of applying said amount to said instalments* shall be inverse to the order in which they are payable hereunder; and that, in the further event that the seller procures insurance covering solely the interest of seller hereunder pursuant to the provisions next herein set forth in subparagraph (d), the amount to be credited and applied in the aforesaid events shall be reduced by an amount equal to the cost of such insurance covering solely the interest of the seller hereunder."

defendant seeks to distinguish *Elzea* by arguing that the only security interests which need be disclosed in the original disclosure statement are those which secure the original debt. The defendant contends that a security interest taken in the unearned insurance premiums would secure only the additional extension of credit made to procure insurance and would not secure the original indebtedness. Again the court must disagree. If GMAC purchased property damage insurance pursuant to the contract, it would do so to protect its interest in the collateral and would add the amount to the original indebtedness. Any unearned insurance premiums which were returned to the defendant would be used to reduce the original indebtedness and not merely to reduce the second extension of credit. In fact, section 226.8(j) of Regulation Z recognizes that when a creditor purchases insurance pursuant to the terms of the contract, it is not a new extension of credit; the section provides that "[a]ny increase in an existing obligation to reimburse the creditor for undertaking the customer's obligation in perfecting, protecting or preserving the security shall not be considered a new transaction subject to this part."

Section 226.6(g) of Regulation Z and Federal Reserve Board Official Interpretation FC–0144 do not mandate a contrary result. They merely stand for the proposition that a creditor need not make new disclosures when it obtains insurance to protect its interest in collateral for a loan. They in no way relieve the creditor from making required disclosures in the original disclosure statement. The fact that the creditor is not required to make additional disclosures if it obtains such insurance on behalf of the debtor is an additional reason why the disclosure of the potential security interest should be made in the original disclosure statement.

The court therefore finds that the defendant violated the TIL Act by failing to disclose a potential security interest taken in unearned insurance premiums if it obtains insurance on behalf of the defendant pursuant to the contract. Having found a violation under the Act, the court must grant the plaintiff's motion for summary judgment. The plaintiff is hereby directed to submit an affidavit with respect to attorney's fees within 10 days of receipt of this order.

IT IS SO ORDERED.